UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY HARRINGTON,<br><br>          Plaintiff,<br><br>v.<br><br>DCR STRATEGIES, INC., DIANA FLETCHER, HUGUETTE MASSE, and DAVID MACKERETH,<br><br>          Defendants. | CASE NO:<br><br>CIVIL ACTION<br><br>**COMPLAINT AND JURY DEMAND** |

Timothy Harrington ("Plaintiff"), having an address at 15 Valhalla Way, Rockaway, New Jersey, as and for his complaint against defendants DCR Strategies, Inc., Diana Fletcher, Huguette Masse and David Mackereth (collectively "Defendants"), says as follows:

**THE PARTIES**

1.    Plaintiff is an individual and a customer of DCR Strategies, Inc.

2.    Defendant DCR Strategies, Inc. ("DCR"), having an address of 2680 Skymark Avenue, Suite 420, Mississauga, Ontario, Canada L4W 5L6, is a financial services firm that provides a variety of services and products to customers.

3. Defendant Diana Fletcher, a resident of Canada, having a business address of 2680 Skymark Avenue, Suite 420, Mississauga, Ontario, Canada L4W 5L6, is President of DCR and was actively involved in the transaction with Plaintiff that is the subject of this Complaint.

4. Defendant Huguette Masse, a resident of Canada, having a business address of 2680 Skymark Avenue, Suite 420, Mississauga, Ontario, Canada L4W 5L6, is Chief Executive Officer of DCR and was actively involved in the transaction with Plaintiff that is the subject of this Complaint.

5. Defendant David Mackereth, a resident of Canada, having a business address of 2680 Skymark Avenue, Suite 420, Mississauga, Ontario, Canada L4W 5L6, is Vice President of DCR and was actively involved in the transaction that is the subject of this Complaint.

6. Upon information and belief, Defendants are licensed to offer financial products and services by the governing authorities in the United States, the State of New Jersey and Canada.

7. DCR represents that it offers a broad variety of products and services to customers, including prepaid card services, compensation and rewards programs, and a "mobile wallet" product designed to efficiently process payments to and

from various accounts held by DCR's customers via cellular phone applications.

8.    DCR's website refers to the company as a "Leader in Prepaid Solutions".

## JURISDICTION AND VENUE

9.    The Court has personal jurisdiction over the Defendants in this matter by virtue of the Defendants' purposeful, regular and continuous contacts in New Jersey. In addition, Plaintiff's causes of action arise out of such contacts and actions by Defendants in New Jersey and aimed at residents of the State.

10.    The Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. § 1332 as complete diversity of citizenship exists between Plaintiff, a resident of the State of New Jersey, and all of the Defendants, who are foreign nationals and citizens of Canada. The amount in controversy exceeds $75,000.00.

11.    Venue is proper in the United States District Court for the District of New Jersey, Newark, pursuant to 28 U.S.C. § 1391 because the incidents giving rise to the causes of action took place within the District.

## FACTS COMMON TO ALL COUNTS

12. In April 2015, defendant Fletcher, the President of DCR, contacted Plaintiff by telephone in New Jersey and proposed to establish an account for Plaintiff with DCR whereby Plaintiff would deposit funds into an account to be maintained by DCR.

13. Fletcher stated that DCR had recently developed a new product that would be helpful to Plaintiff in his various business enterprises.

14. According to Fletcher, DCR had perfected a "closed loop" banking system which would allow customers to perform multiple functions within the context of complicated business transactions through debit cards and other prepaid cards. The product was represented by Fletcher and the Defendants as a service that would streamline banking and payment transaction functions for DCR's customers.

15. DCR's website describes its prepaid card business as follows:

> Our end-to-end chain management covers every element of your prepaid card program from design to implementation. Our services include card design, card submission approval, client portal design and development to administration management, reporting, marketing material and live customer service support.

4

16.   Fletcher was aware that Plaintiff was an entrepreneur from prior business dealings with Plaintiff in other matters.

17.   Fletcher met with Plaintiff in New Jersey and also contacted him by telephone throughout the period relevant to the claims.

18.   Fletcher and defendants Masse and Mackereth, both officers of DCR, stated to Plaintiff that DCR's new banking product that would permit Plaintiff access to funds in the form of a "wallet".

19.   Fletcher stated that Plaintiff would be an ideal customer for DCR to showcase its new "wallet" program to other prospective customers.

20.   In a series of emails and telephone communications in April 2015, Defendants represented to Plaintiff the DCR "wallet" would allow him to deposit funds and easily access such funds for business needs by debit card, wire transfer and other methods using cell phone applications.

21.   Defendant Fletcher told Plaintiff that DCR sought customers to deposit monies in such accounts as a means of demonstrating to other vendors and prospective customers the value of such an account.

5

22.    As stated on its website, DCR and the other Defendants assured Plaintiff and other prospective customers that it was in full compliance with governing laws and regulations:

> DCR has the experience and expertise necessary to create a successful, legal card program tailored to any customer's needs all over the world. Our solutions adhere to strict standards to ensure their performance and reliability. As a Visa®, MasterCard® and Discover® issuing partner we [ ] strict guidelines set out by all Networks.

23.    Prior to entering into the transaction, Plaintiff explicitly stated to Fletcher and the Defendants that he needed to have the ability to access his funds immediately after the account was established.

24.    Defendants expressly stated, by oral communication, text message and emails in early April 2015, that they had created a "wallet" for Plaintiff and that the funds deposited by Plaintiff would be immediately available to him for his various business needs.

25.    In one email to Plaintiff on April 17, 2015, a DCR representative, Mina Dalmia stated that "We will advise you once we receive the funds and add the funds to the account."

26.    Based on these statements by Fletcher and the other Defendants, Plaintiff caused $700,000.00 to be wired to DCR in a

6

series of seven separate wires from April 17, 2015 to April 24, 2015.

27.    Plaintiff received confirmation of each of the wire transfers.

28.    At the time the wires were sent, Fletcher and Masse confirmed that the amounts had been received and that Plaintiff would have access to the money in his "wallet" within a short period of time through the cards he had received.

29.    Defendants promised Plaintiff that they would deposit the funds in accounts maintained by Defendants and accessible to Plaintiff through several debit/prepaid account cards.

30.    On or about April 15, 2015, Defendants sent Plaintiff wallet log-in information along with five account cards in anticipation of Plaintiff's wiring funds for deposit.

31.    Plaintiff's wires to Defendants totaled $700,000 and were confirmed by documentation and emails from Defendants.

32.    The wires were sent on behalf of Plaintiff from his personal bank account held at a Rockaway, New Jersey branch of a national bank.

33.    The wires were sent to Defendants in Ontario, Canada.

34.    After receiving the $700,000 and confirming this fact to Plaintiff, Defendants failed to set up the "wallet" account for Plaintiff or to deposit the funds into such an account.

7

35.  In fact, at the time of the wire transfers, Defendants had not fully developed the "wallet" product for use in their banking operations.  The statements by Fletcher, Masse and the other Defendants were false when they were made to Plaintiff.

36.  Defendants did not set up the business accounts as promised to Plaintiff.

37.  Defendants did not provide Plaintiff with access to the funds ($700,000) that were wired in April, 2015.

38.  Within a short time after wiring the monies, Plaintiff sought to access funds from his account.

39.  Plaintiff was unable to access his funds.

40.  Defendants Fletcher and Masse stated to Plaintiff that he would not have access to the "wallet" and the other services promised to him at the time he wired the funds.

41.  Plaintiff then demanded the return of the entire $700,000 from Defendants.

42.  Defendants acknowledged that they held Plaintiff's funds and stated that they were willing to refund the monies to him.

43.  Over the course of several months, Fletcher and the other Defendants made partial payments to Plaintiff. Such payments totaled only $120,000.

44. Defendants have made no payments other than the repayment of $120,000.

45. Despite promises by Defendants that they would repay Plaintiff for the amounts wrongfully taken from him, there remains a total of $580,000 of Plaintiff's money held without authorization by Defendants.

46. Throughout the period from April, 2015 to the present, Plaintiff has been denied access to $580,000 of the monies he wired to Defendants.

47. Defendants have used Plaintiff's funds for their own purposes and have failed to establish the accounts that they promised Plaintiff at the outset of the transaction.

48. As a result of Defendants' unauthorized, intentional and wrongful actions, Plaintiff has suffered and continues to suffer substantial damages.

## FIRST COUNT
### (New Jersey Consumer Fraud Act)

49. Plaintiff repeats each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth at length herein.

50. Plaintiff entered into a transaction in which he was a customer of the Defendants who provided banking and other business-related financial services and products.

51. Defendants are and were sellers of the prepaid card products and services to customers, including Plaintiff.

52. In the context of the transaction whereby Plaintiff wired $700,000 to Defendants, Defendants made misrepresentations to Plaintiff.

53. The misrepresentations by Defendants were material to the transaction and included statements that Defendants would deposit the funds in an account to which Plaintiff would have immediate access and that the monies would be placed in a "wallet" and other products for Plaintiff to use.

54. Defendants also made representations to Plaintiff that DCR maintained full compliance with governing regulations and that it had the ability and experience necessary to create a legal card program to meet Plaintiff's needs.

55. Defendants' committed unlawful acts, unconscionable business practices and per se violations of laws and regulations that constitute unlawful conduct in violation of the New Jersey Consumer Fraud Act.

56. The statements made by Fletcher and the other Defendants were false and misleading.

57. Defendants also knowingly omitted material facts to Plaintiff, namely that they had not created the "wallet" service and product for Plaintiff.

10

58. As a direct and proximate result of Defendants' unlawful acts (misrepresentations, knowing omissions, per se violations and unconscionable business practices), Plaintiff has suffered ascertainable loss in the amount of $580,000 in addition to other damages relating to Plaintiff's inability to access his funds for business and personal uses.

WHEREFORE, plaintiff, Timothy Harrington demands judgment against defendants DCR Strategies, Inc., Diana Fletcher, Huguette Masse, and David Mackereth, jointly and severally, for compensatory damages, statutory treble damages, a refund pursuant to the Consumer Fraud Act, attorneys' fees, punitive damages, costs and such further relief as the Court deems just and equitable.

### SECOND COUNT
### (Common Law Fraud)

59. Plaintiff repeats each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth at length herein.

60. In April, 2015, Plaintiff was considering whether to enter into a transaction as a customer of Defendants for business services and merchandise.

61. Defendant Fletcher made statements to Plaintiff that DCR would establish an account for him that would be a virtual

11

"wallet" whereby Plaintiff could access funds for different purposes.

62. Defendant Fletcher also stated that DCR had actually finalized its "wallet" product to be used by Plaintiff as an account holder.

63. Fletcher and the Defendants further represented to Plaintiff that they would deposit Plaintiff's funds in an account to which he would have immediate access by debit or other prepaid card.

64. Each of these representations, made by oral telephone communication, text message and email, was false at the time it was made by the Defendants.

65. Defendants made the misrepresentations to Plaintiff with the intention that Plaintiff would rely on the misrepresentations and to induce Plaintiff to wire funds to Defendants.

66. Plaintiff reasonably relied on the representations made by Defendants at the time he entered into the transaction whereby he wired $700,000 to Defendants.

67. As a direct result of Plaintiff's reasonable reliance on Defendants' misrepresentations, Plaintiff suffered damages in the form of the loss of $580,000 that was wired but never deposited into an account.

12

68. As a direct and proximate result of Defendants' knowing and intentional misrepresentations, Plaintiff was caused to suffer damages.

WHEREFORE, plaintiff, Timothy Harrington demands judgment against defendants DCR Strategies, Inc., Diana Fletcher, Huguette Masse and David Mackereth, jointly and severally, for compensatory damages, punitive damages, attorneys' fees, costs and such further relief as the Court deems just and equitable.

## THIRD COUNT
### (Breach of Contract)

69. Plaintiff repeats each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth at length herein.

70. Plaintiff entered into an agreement with DCR Strategies and Defendants whereby the latter agreed to deposit Plaintiff's funds into an account.

71. Plaintiff agreed to transfer $700,000 to Defendants to be deposited into an account for immediate access to Plaintiff.

72. In a series of wire transfers in April, 2015, Plaintiff sent $700,000 to DCR Strategies and Defendants. Plaintiff has fully performed his obligations under the agreement.

73. Defendants have failed to perform pursuant to their agreement with Plaintiff.

13

74. Defendants' failure and refusal to provide Plaintiff either the "wallet" product or access to his funds is a breach of contract.

75. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages.

WHEREFORE, plaintiff, Timothy Harrington demands judgment against defendants DCR Strategies, Inc., Diana Fletcher, Huguette Masse and David Mackereth, jointly and severally, for compensatory damages, costs and such further relief as the Court deems just and equitable.

### FOURTH COUNT
### (Unjust Enrichment)

76. Plaintiff repeats each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth at length herein.

77. Plaintiff transferred $700,000 to Defendants during the period from April 17, 2015 to April 24, 2015.

78. Defendants received the benefit of Plaintiff's transfer of $700,000.

79. In return, Plaintiff received no value or any consideration from Defendants.

80. It would be unjust and inequitable for Defendants to retain the benefit of the sum of $700,000 from Plaintiff under the circumstances.

81. As a direct and proximate result, Defendants were unjustly enriched to Plaintiff's detriment.

WHEREFORE, plaintiff, Timothy Harrington demands judgment against defendants DCR Strategies, Inc., Diana Fletcher, Huguette Masse and David Mackereth, jointly and severally, for compensatory damages, costs and such further relief as the Court deems just and equitable.

## FIFTH COUNT
### (Conversion)

82. Plaintiff repeats each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth at length herein.

83. Defendants have exercised dominion over Plaintiff's money without authorization or permission from Plaintiff.

84. Defendants have acted intentionally in taking Plaintiff's property.

85. As a direct and proximate result of Defendants' intentional conversion of Plaintiff's property, Plaintiff has suffered substantial damages.

WHEREFORE, plaintiff, Timothy Harrington demands judgment against defendants DCR Strategies, Inc., Diana Fletcher, Huguette Masse and David Mackereth, jointly and severally, for compensatory damages, punitive damages, attorneys' fees, costs and such further relief as the Court deems just and equitable.

15

## SIXTH COUNT
### (Breach of Fiduciary Duty)

86.    Plaintiff repeats each and every allegation contained in the preceding paragraphs of the Complaint as though fully set forth at length herein.

87.    Defendants owed a fiduciary duty to Plaintiff as the parties entrusted to receive and deposit monies from Plaintiff.

88.    Defendants owed a fiduciary duty to act in accordance with Plaintiff's best interests and to take no action to deprive Plaintiff of his property.

89.    By converting Plaintiff's monies and depriving him of approximately $580,000, Defendants have breached their fiduciary duty to Plaintiff.

90.    As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff has suffered substantial damages.

WHEREFORE, plaintiff, Timothy Harrington demands judgment against defendants DCR Strategies, Inc., Diana Fletcher, Huguette Masse and David Mackereth, jointly and severally, for compensatory damages, punitive damages, attorneys' fees, costs and such further relief as the Court deems just and equitable.

BELL, SHIVAS & FASOLO, P.C.
150 Mineral Springs Drive
P.O. Box 220
Rockaway, New Jersey 07866
T (973) 442-7900
F (973) 442-7990

Attorneys for Plaintiff
  Timothy Harrington

By: _____
        David T. Shivas

Dated:    April 15, 2016

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues.

BELL, SHIVAS & FASOLO, P.C.
Attorneys for Plaintiff
Timothy Harrington

By: _____
        David T. Shivas

Dated:    April 15, 2016

17

## DESIGNATION OF TRIAL COUNSEL

David T. Shivas, Esq. is designated as trial counsel in this matter on behalf of plaintiff.

BELL, SHIVAS & FASOLO, P.C.
Attorneys for Plaintiff
Timothy Harrington

By: _____
David T. Shivas

Dated: April 15, 2016

## CERTIFICATION

Pursuant to Local Rule 11.2, I certify that the matter in controversy alleged in the foregoing Complaint is not currently being litigated before any Court and the matter is not the subject of any alternative dispute resolution proceedings.

BELL, SHIVAS & FASOLO, P.C.
Attorneys for Plaintiff,
Timothy Harrington

By: _____
David T. Shivas

Dated:  April 15, 2016

18